# STATE OF MICHIGAN

# COURT OF APPEALS

LARRY SHEARS and MARGARET FRALICK,

        Plaintiffs-Appellees,

v

DOUGLAS BINGAMAN, individually and as
CITY OF FLINT TREASURER, DARNELL
EARLEY, individually and as CITY OF FLINT
EMERGENCY MANAGER, and CITY OF
FLINT,

        Defendants-Appellants.

UNPUBLISHED
August 24, 2017

No.  329776
Genesee Circuit Court
LC No.  14-103476-CZ

Before:  O'BRIEN, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Douglas Bingaman ("Mr. Bingaman"), Darnell Earley ("Mr. Earley"), and the City of Flint ("the City") (referred to collectively as "defendants") appeal as of right the circuit court's October 15, 2015 order on the parties' motions for summary disposition, which denied in part defendants' motion for summary disposition.  We reverse in part and remand for the entry of an order granting summary disposition in defendants' favor.

The named plaintiffs in this class action, Larry Shears ("Mr. Shears") and Margaret Fralick ("Ms. Fralick"), filed this lawsuit against defendants, challenging defendants' decisions to increase water and sewer rates by 35 percent and to increase a readiness-to-serve charge effective September 16, 2011.  The complaint included the following six counts:

## []COUNT I - 42.U.S.C. §  1983

## VIOLATION OF MCL § 123.141(3)

69.    Plaintiffs restate and reallege each and every allegation set forth in all previous paragraphs and incorporate them by reference herein.

70.    MCL § 123.141(3), required Flint, a wholesale customer of the city of Detroit Water Supply Department, to provide water at a price equal to the actual cost of providing water service to Plaintiffs as retail customers of Flint.  This

statutory entitlement to water at this price created a property interest for Flint's retail customers under the laws of the State of Michigan.

71.    Flint's practice, policy, and custom of charging and collecting from its retail water customers increased water rates from September 16, 2011 to the end of its wholesale Detroit water purchase contract on or about April 30, 2014, that were in excess of the actual cost of providing the water that it purchased from the Detroit Water Supply Department, was in violation of MCL § 123.141(3) and deprived its retail water customers of their property interests in water charges that comport with state law, without just compensation and without due process of law, in violation of the Fourteenth Amendment of the United States Constitution and Article I § 17 of the Michigan Constitution.

## COUNT II - 42.U.S.C. § 1983

## UNCONSTITUTIONAL DEPRIVATION OF PROPERT[Y ]WITHOUT DUE PROCESS – VIOLATION OF FLINT CHARTER § 46-52(b)(1)

72.    Plaintiffs restate and reallege each and every allegation set forth in all previous paragraphs and incorporate them herein by reference.

73.    Flint ordinance 46 – 52(b)(1) required FLINT to keep on file in Appendix A of the Flint City Code, with the City Clerk, an authorizing resolution of the Flint City Council, which established how its water readiness to serve charge was calculated for its retail residential, small business, and industrial water customers with and without remote water meters.

74.    Flint's practice, policy, and custom of collecting water readiness to serve charges from its retail residential, small business, and industrial water customers with and without remote water meters between September 16, 2011 and the date hereof, is in violation of its Ordinance 46 – 52 (b)(1) and deprived its retail residential, small business, and industrial water customers with and without remote water meters water customers of their property interests in validly computed/calculated water readiness to serve charges that comport with Flint ordinances, without due process of law, or just compensation, in violation of the Fourteenth Amendment of the United States Constitution and Article I § 17 of the Michigan Constitution.

## COUNT III - 42.U.S.C. § 1983

## UNCONSTITUTIONAL DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS – VIOLATION OF FLINT CHARTER § 46 -52.1

75.    Plaintiffs restate and reallege each and every allegation set forth in all previous paragraphs and incorporate them herein by reference.

76.    At all times relevant hereto Flint ordinance 46-52.1, required that water and sewer rates be calculated and transmitted on or before April 15th to the Mayor

and City Council for the purpose of pricing and calculating all bills for the forthcoming 12 months, beginning July 1 of that year, thereby creating a property interest for its retail water and sewer customers to have their water and sewer rates calculated and collected in conformity with Flint's ordinance 46-52.1, created an entitlement for those retail water and sewer customers to be charged a specific price for water and sewer services beginning July 1 of each year.

77.    Flint's practice, policy, and custom of collecting the 35% increased water and sewer rates from its retail customers between September 16, 2011 and July 1, 2012 deprived Plaintiffs of their property interests in water and sewer charges that were implemented in conformity with Flint ordinances, by collecting more money, then it was legally entitled to collect, at a time not authorized by Flint ordinance for retail water and sewer rates, without due process of law or just compensation, in violation of the Fourteenth Amendment of the United States Constitution and Article I § 17 of the Michigan Constitution.

## COUNT IV – 42.U.S.C. § 1983

## UNCONSTITUTIONAL DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS – VIOLATION OF FLINT CHARTER § 46 -52.1(b)

78.    Plaintiffs restate and reallege each and every allegation set forth in all previous paragraphs and incorporate them herein by reference.

79.    At all times relevant hereto Flint ordinance 46-52.1(b) required that water rates be limited to an 8% annual adjustment.

80..    Flint's practice, policy, and custom of collecting the 12.5% water rate increase from its retail customers between July 1, 2012 and the date hereof, deprived Plaintiffs of their property interests in water rate charges that comport with FLINT ordinances by collecting from its retail water customers more money then it was legally entitled to collect for annual retail water increases, without due process of law or just compensation, in violation of the Fourteenth Amendment of the United States Constitution and Article I § 17 of the Michigan Constitution.

## COUNT V

## CLAIMS FOR REFUNDS OF ILLEGALLY COLLECTED INCREASED WATER AND SEWER RATES AND INCREASED READINESS TO SERVE CHARGES

81.    Plaintiffs restate and reallege each and every allegation set forth in all previous paragraphs and incorporate them herein by reference.

82.    Flint has collected a 35 % illegal rate increase and increased readiness to serve charge between September 16, 2011 and July 1, 2012 from customers of Flint's water and sewer serves department.

83.     The actual amount can be readily identified from the financial records of Flint.

84.     Flint should be ordered to refund to each and every one of its water and sewer customers the illegal 35 % rate increase/service charge amounts that said customers have paid to Flint between September 16, 2011 and July 1, 2012.

## COUNT VI

## CLAIMS FOR DECLARATORY RELIEF AND MONETARY DAMAGES

85.     Plaintiffs restate and reallege each and every allegation set forth in all previous paragraphs and incorporate them herein by reference.

86.     Many of Flint's customers have been unable or unwilling to pay the illegal rate increases since September 16, 2011 and have had their water service disconnected by Flint.

87.     Flint should be enjoined from further disconnections based upon the illegal rate and service charge increases.

88.     Flint should be required to pay monetary damages to the customers who have had their water service disconnected due to their inability or unwillingness to pay the illegal water and sewer rate increases implemented on September 16, 2011.

Eventually, the parties exchanged motions for summary disposition, and defendants' motion for summary disposition relied, in part, on their assertion that governmental immunity barred all of plaintiffs' claims as set forth in the complaint and quoted above. The circuit court agreed in part, explaining, in full, as follows:

The Court agrees with Defendants that the ordinances that they clearly violated do not create a private cause of action to recover money damages; so to the extent that Plaintiffs have alleged claims for money damages based on ordinance violations, this Court cannot grant relief on those claims because they do not exist. And, as such, the Defendants are entitled to summary disposition on those specific claims pursuant to MCR 2.116(C) (8) because they are entitled to judgment as a matter of law.

However, to the extent that Plaintiffs' claims against Defendant regarding the water and sewer rates and the service charge are based on a theory of unjust enrichment, since unjust enrichment is a valid, equitable claim, Plaintiffs have stated a claim on which this Court may grant relief; so Defendants are not entitled to summary disposition of any unjust enrichment claims pursuant to MCR 2.116(C) (8) because they are not entitled to judgment as a matter of law.

Because a claim of unjust enrichment is an equitable claim that sounds in contract, not in tort, Defendants are not entitled to immunity from these claims

under the GTLA. As such, Defendants are not entitled to summary disposition on any claims that sound in contract under MCR 2.116(C) (7), because they are not entitled to judgment as a matter of law.

Finally, and although it seems on the surface that charging and collecting a thirty-five percent increase in water and sewer rates and a service charge certainly is unjust when those charges were collected by Defendants while they were clearly not complying with their own ordinances, the Court cannot decide the issue of Defendants' potential liability as a matter of law. A party's legal arguments concerning unjust enrichment claims have not been fully fleshed out. In fact, Defendants have not even addressed the issue of unjust enrichment and Plaintiffs have merely stated that they have alleged their – that claim.

After conducting its own research on unjust enrichment, it appears to the Court that the resolution of this claim is a highly fact-intensive endeavor. As such, the Court is not in a position to grant either party's motion for summary disposition under (C) (10) because the Court cannot rule as a matter of law on the merits of Plaintiffs' unjust enrichment claims. To the extent that Plaintiffs seek relief for water and sewer rates and service – and the service charge under the theory of unjust enrichment, they have stated a claim on which the Court may grant relief. Because the claim of unjust enrichment sounds in contract, the Defendants are not immune from this claim under the GTLA.

Finally, because unjust enrichment is a highly fact-intensive question, this Court cannot decide Defendants' liability as a matter of law at this point in time. Plaintiffs' motion for summary disposition as to liability should be denied. Defendants' motion for summary disposition under (C) (8) should be granted to the extent that Plaintiffs' claims seek money damages for violating City ordinances. In all other respects, Defendants' motions should be denied.

Defendants appealed as of right this decision, MCR 7.202(6)(a)(v), arguing, in pertinent part, that summary disposition pursuant to MCR 2.116(C)(7) was appropriate with respect to all six counts as set forth in plaintiffs' complaint. We agree.

This Court reviews de novo the trial court's decision on a motion for summary disposition under MCR 2.116(C)(7). *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007). A defendant is entitled to summary disposition under MCR 2.116(C)(7) if the plaintiff's claims are barred because of immunity granted by law. *Id*. at 466. If reasonable minds could not differ on the legal effects of the facts, it is a question of law whether governmental immunity bars a plaintiff's claim. *Snead v John Carlo, Inc*, 294 Mich App 343, 354; 813 NW2d 294 (2011).

We review de novo the applicability of governmental immunity and the statutory exceptions to governmental immunity. *Moraccini v City of Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). [*Milot v Dep't of Transp*, ___ Mich App ___, ___; ___ NW2d ___ (2016); slip op at 2 (Docket No. 329728).]

The Governmental Tort Liability Act ("GTLA"), MCL 691.1401 *et seq*., provides "broad immunity from tort liability to governmental agencies whenever they are engaged in the exercise or discharge of a governmental function . . . ." *Milot*, ___ Mich App at ___; slip op at 2. Consequently, a plaintiff may only sue a governmental entity in tort if the suit falls within one of six statutory exceptions. *Id*. Those exceptions include the highway exception, MCL 691.1402, the motor-vehicle exception, MCL 691.1405, the public-building exception, MCL 691.1406, the propriety-function exception, MCL 691.1413, the governmental-hospital exception, MCL 691.1407(4), and the sewage-disposal-system-event exception, MCL 691.1417(2) and (3). *Hannay v Dep't of Transp*, 497 Mich 45, 60 n 34; 860 NW2d 67 (2014). This Court broadly construes the scope of governmental immunity and narrowly construes its exceptions. *Milot*, ___ Mich App at ___; slip op at 2.

To maintain an action against a government agency or its employees exercising a governmental function, a plaintiff *must* plead in avoidance of governmental immunity. *County Road Ass'n of Mich v Governor*, 287 Mich App 95, 119; 782 NW2d 784 (2010). A plaintiff does so by asserting that a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged wrong occurred during the exercise or discharge of a nongovernmental function. *Kendricks v Rehfield*, 270 Mich App 679, 681; 716 NW2d 623 (2006). Here, as is evidenced by the quoted portion of plaintiffs' complaint above, plaintiffs did not plead in avoidance of governmental immunity. Indeed, it does not even appear that governmental immunity is acknowledged in the complaint. Nevertheless, plaintiffs argue, and the circuit court concluded, that some of or all of plaintiffs' claims survived summary disposition as unjust-enrichment claims. We do not agree. The phrase "unjust enrichment," or anything similar to that phrase, is not present in the complaint. In fact, the only mention of a "contract" is made in reference to "Flint's . . . wholesale Detroit water purchase contract . . . ." While it is true that we look to the substance of a complaint rather than its form, *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007), we are of the view that neither the substance nor the form of the complaint at issue here includes an unjust-enrichment claim as argued by plaintiffs and found by the circuit court. Rather, it is quite apparent, at least in our view, that plaintiffs' claims constitute constitutional or tort claims based on alleged violations of various ordinance provisions, see *In re Bradley Estate*, 494 Mich 367, 387; 835 NW2d 545 (2013) (providing that MCL 691.1407(1)'s reference to "tort liability," not "tort claim" or "tort action," reflects the Legislature's intent to apply governmental immunity based "on the *nature* of the liability rather than the type of action pleaded"), and the circuit court explicitly dismissed those claims:

> The Court agrees with Defendants that the ordinances that they clearly violated do not create a private cause of action to recover money damages; so to the extent that Plaintiffs have alleged claims for money damages based on ordinance violations, this Court cannot grant relief on those claims because they do not exist.

Plaintiffs did not appeal that decision. We are therefore prohibited from granting any relief in that regard. See *Rohl v Leone*, 258 Mich App 72, 77 n 2; 669 NW2d 579 (2003) ("[A]n appeal is limited to the issues raised by the appellant, unless the appellee cross-appeals as provided in MCR 7.207.").

-6-

Moreover, even if a claim for unjust enrichment had been properly alleged, we are not convinced that such a claim could move forward under the facts and circumstances of this case. Michigan caselaw is clear in that there is a "strong presumption that statutes do not create contractual rights." *Studier v Mich Pub Sch Employees' Retirement Bd*, 472 Mich 642, 661; 698 NW2d 350 (2005). "In order for a statute to form the basis of a contract, the statutory language must be plain and susceptible of no other reasonable construction than that the Legislature intended to be bound to a contract." *Id*. at 662 (citations and internal quotation marks omitted). "[I]n addition to the absence of such clear and unequivocal statutory language, the circumstances of a statute's passage may belie an intent to contract away governmental powers." *Id*. at 663 (citations and internal quotation marks omitted). These rules apply to ordinances as well. *Warren's Station, Inc v Bronson*, 241 Mich App 384, 388; 615 NW2d 769 (2000). On appeal, plaintiffs do not attempt to overcome this "strong presumption." *Studier*, 472 Mich at 661. Rather, they seek to circumvent that presumption by arguing that various ordinance provisions created a claim for unjust enrichment, which is an implied *contractual* relationship between plaintiffs and the City of Flint. See *Karaus v Bank of New York Mellon*, 300 Mich App 9, 23; 831 NW2d 897 (2012) (providing that if a party satisfies the two elements of an unjust-enrichment claim, "the law will imply a contract to prevent the unjust enrichment."). We are simply unaware of any authority that would support the proposition that, where an ordinance or statutory provision does not create a contractual relationship, a party may nevertheless create one under the guise of unjust enrichment, which sounds in equity *and contract*. We therefore reject plaintiffs' argument in this regard.

Plaintiffs' other arguments on appeal do little to alter this conclusion. Plaintiffs argue that defendants' actions constitute "ultra vires misconduct," that various bondholders have claims against defendants, and that replevin applies. These arguments are so far removed from the claims alleged in plaintiffs' complaint and those addressed by the circuit court that we feel any attempt to address them would be inappropriate. Indeed, because they have not been adequately developed below or on appeal, we are prohibited from doing so. See *Rohl*, 258 Mich App at 77 n 2. Plaintiffs also argue that this case is controlled by this Court's decision in *Trahey v Inkster*, 311 Mich App 582; 876 NW2d 582 (2015). However, *Trahey* supports defendants', not plaintiffs', position in this case. Indeed, in that case, a case where the plaintiffs challenged an increase in water and sewer rates as being unreasonable and constituting unjust enrichment, this Court expressly reversed the trial court's verdict in the plaintiffs' favor. *Id*. at 598. Specifically, it "reverse[d] the trial court's determination regarding the rates and remand[ed] for entry of a judgment of no cause of action in favor of the city with respect to plaintiff's claim that the water and sewer rates violated the Inkster Charter" and "reverse[d] the trial court's unjust-enrichment finding, which was predicated on the court's erroneous evaluation of the water and sewer rates." *Id*. There is no reason why the same should not also prove true in this case.

Finally, plaintiffs' claims in this case have, for all intents and purposes, already been addressed and rejected by a panel of this Court in a published, and thus binding, decision. MCR 7.215(J)(1). In *Kincaid v Flint*, 311 Mich App 76, 82-83; 874 NW2d 193 (2015), this Court addressed the following three issues:

> (1) water and sewer rate increases that occurred . . . in September 2011 were not authorized by defendant's ordinances, (2) [the emergency manager] did not have the authority to ratify [the] unauthorized increases and then further increase water

and sewer rates in violation of the same ordinances, and (3) defendant wrongly deposited funds from water and sewer revenue into a single pooled cash account.

This Court summarized those issues as follows: "The essence of this case is a claim that the rate increases in September 2011 were made contrary to defendant's Ordinances §§ 46-52.1 and 46-57.1, and a claim that defendant had illegally pooled the monies collected for the water and sewer funds and used them to pay general obligations . . . ." *Id*. at 79. This Court expressly rejected that claim, concluding that "Plaintiffs' argument that the increases also violated Ordinance 46-52.1 by increasing the water rates above 8% is not supported by the language of the ordinance," *id*. at 84, and that plaintiffs' argument "that defendant illegally commingled funds" had "no merit," *id*. at 92. The claims at issue in this case, with the exception of the newly raised concept of unjust enrichment, are, in essence, the same, and there is nothing in the record in this case or in *Kincaid* to suggest that a different outcome would be appropriate here. Therefore, summary disposition in defendants' favor with respect to all claims is ultimately appropriate. The only reason a remand was deemed necessary in *Kincaid* was to allow the plaintiffs an opportunity to amend their complaint; however, in this case, unlike in *Kincaid*, a motion to amend the complaint has not been filed. *Id*. at 94-95. Consequently, there is no denial of such a decision for this Court to evaluate.

Reversed and remanded for entry of an order granting summary disposition pursuant to MCR 2.116(C)(7) in defendants' favor. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens